# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**YOKASTA MARIA NUNEZ FIGUEREO,**

    **Plaintiff,**

  v.                                  **Civil Action 2:20-cv-1992**
                                      **Judge Sarah D. Morrison**
**COMMISSIONER OF SOCIAL**           **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Yokasta Maria Nunez Figuereo ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 21), the Commissioner's Response in Opposition (ECF No. 23), and the administrative record (ECF No. 16). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND

Plaintiff protectively filed her application under Title XVI for supplemental security income benefits on October 28, 2016, alleging a disability onset date of September 1, 2016. (R. 180.) Plaintiff's application was denied initially on February 10, 2017, and upon reconsideration on May 8, 2017. (*Id*. at 94–110, 112–26.) Administrative Law Judge Jeannine Lesperance (the "ALJ") held a hearing on November 15, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 42–72.) Vocational expert Bruce Growick also appeared and

testified. (*Id*.) On February 5, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 15–36.) On April 20, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff advances two contentions of error: (1) the ALJ erred in finding that Plaintiff's hip conditions were not a severe impairment; and (2) the ALJ erred in her consideration and weighing of Plaintiff's treating physician's opinion. (Pl.'s Statement of Errors 13–24, ECF No. 21.)

## II.     THE ALJ DECISION

On February 5, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 15–36.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

since September 12, 2016, which the ALJ characterized as Plaintiff's application date.[2] (*Id.* at 17.) At step two, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus with peripheral neuropathy; peripheral vascular disease with varicose veins; degenerative disc and joint disease of the spine; obesity; Bell's palsy as of March 2018; and a history of a depressive disorder. (*Id.* at 18–20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 20–22.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual function capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant could occasionally climb ramps and stairs. She could occasionally stoop, kneel, crouch, crawl, and balance. She could occasionally push/pull with the bilateral lower extremities. The claimant could occasionally work in extreme temperatures and with vibration. She could not climb ladders, ropes, and scaffolds. The claimant should avoid exposure to hazards, such as unprotected heights and should avoid work in proximity to moving mechanical parts. The claimant could perform simple, routine tasks at an average pace, without strict time of production demands. She could interact occasionally with coworkers and supervisors on matters limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution. The claimant's work duties should not require interaction with the general public. She could adapt to occasional changes in work duties. Further, as of March 2018, due to Bells' palsy, the claimant could talk occasionally.

(*Id.* at 22–23.) The ALJ then relied on the hearing testimony of the VE to conclude that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 35–36.) She therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 36.)

---

[2] Plaintiff's application bears a date of October 28, 2016 (R. 180), and the undersigned is unable to locate September 12, 2016, as a relevant application date in the record. However, this discrepancy does not affect the ALJ's or the Court's analysis.

## III. RELEVANT RECORD EVIDENCE

The following summarizes the record evidence relevant to Plaintiff's statement of errors:

### A. Hip Condition

#### 1. Medical Records

Plaintiff's hip pain complaints began in December 2016 following a fall. (R. 453.) In December 2016, Plaintiff went to the emergency room and reported right hip pain, was diagnosed with "lateral pain of right hip," and encouraged to get bursa injections and attend physical therapy. (*Id.* at 471–72.) At that time, she had normal range of motion in her hips and imaging of her hip was unremarkable. (*Id.* at 457–58, 471.) In January 2017, Plaintiff had injections in her right hip. (*Id.* at 518.) From January 2017 through the remainder of the record, Plaintiff regularly reported hip pain. (*See e.g., id.* at 532, 626, 635, 666, 681.) Plaintiff had more imaging of her hip in 2018, which showed a partial tear of the gluteal cuff and right hip osteoarthritis with degenerative changes of the labrum. (*Id.* at 665.) In October 2018, Plaintiff had a surgical procedure done on her hip, during which her doctor found a "partial undersurface gluteal cuff tear." (*Id.* at 681, 683.)

#### 2. Hearing Testimony

At the hearing, Plaintiff testified that it was difficult to sleep because of pain from a recent hip surgery. (*Id.* at 54.) Plaintiff also testified that she needed to use a cane to help keep her balance, but she did not specify whether the cane use was a result of her hip condition. (*Id.* at 59–60.)

### B. Opinions of Ernesto A. O. Cruzado, M.D., Plaintiff's Treating Physician

Ernesto A. O. Cruzado, M.D., Plaintiff's treating physician, completed physical capacity evaluations of Plaintiff on April 27, 2017, and August 30, 2018. (R. 535–36, 639–640.) In 2017, Dr. Cruzado opined that Plaintiff could lift or carry no more than 1–2 pounds and could

walk, stand, or sit for less than 30 minutes in an 8-hour day.  (*Id.* at 535.)  He further opined that Plaintiff could never twist, stoop/bend, crouch, climb stairs, climb ladders, reach, handle, finger, feel, or push/pull, and that Plaintiff must avoid all exposure to a variety of environmental conditions.  (*Id.* at 535–36.)  Dr. Cruzado also opined that Plaintiff had mental impairments that would substantially affect her ability to understand, remember, or carry out simple instructions and to make simple work-related decisions.  (*Id.* at 536.)

Dr. Cruzado generally assessed less restrictive limitations in 2018, opining that Plaintiff could occasionally lift or carry up to 5 pounds, but frequently lift or carry only 1–2 pounds; that she could walk and stand for less than 30 minutes, but sit for up to two hours, in an 8-hour day; that she could occasionally twist, stoop/bend, and climb stairs, but never crouch or climb ladders; that she could occasionally reach, handle, finger, and feel, but never push/pull; that she should avoid concentrated exposure to extreme cold and heat, avoid even moderate exposure to wetness and humidity, and avoid all exposure to noise, vibration, fumes, odors, dusts, and heights; and that her mental impairments would substantially affect her ability to understand, remember, or carry out simple instructions, make simple work-related decisions, respond appropriately to supervisors and coworkers, and deal with changes in a routine work setting.  (*Id.* at 639–40.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

5

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff contends that remand is required for the following reasons: (1) the ALJ erred in finding that Plaintiff's hip conditions were not a severe impairment; and (2) the ALJ erred in her consideration and weighing of her treating physician's opinion. (Pl.'s Statement of Errors 13–24, ECF No. 21.) For the reasons discussed below, the undersigned finds that each contention of error is without merit.

6

**A.     Any error the ALJ may have made in her step-two analysis regarding Plaintiff's hip condition was harmless.**

Plaintiff argues that the ALJ erred at step two when she found that Plaintiff's hip condition was not a severe impairment. (Pl.'s Statement of Errors 13–18, ECF No. 21.) Plaintiff argues that the objective findings, treatment history, and duration of her hip condition demonstrate that qualifies as a severe impairment. (*Id.*) The Court finds this contention of error to be unavailing.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

However, where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe

impairment and considered all of the claimant's impairments in the RFC assessment); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, any error the ALJ may have made in evaluating Plaintiff's hip condition was harmless. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy; peripheral vascular disease with varicose veins; degenerative disc and joint disease of the spine; obesity; Bell's palsy as of March 2018; and a history of a depressive disorder. (R. 18.) Because the ALJ had already determined that Plaintiff had these severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa*, 73 F. App'x at 803. Further, the ALJ provided the following discussion about Plaintiff's hip conditions during her step-four analysis of Plaintiff's RFC:

> I have read and considered the postoperative limitations evidenced at Exhibit 13F/2. Postoperatively it was noted in October 2018 that the claimant was limited to 50 percent weight bearing with the right lower extremity with a flat foot to normalize her gait. Further, it was cited she should engage in no active hip abduction. These limitations, as noted, were provided post right bursa/gluteal tear repair. The limitations are notably not permanent in duration, but are rather temporary during the claimant's surgical recovery period. I find the limits somewhat persuasive, as the record supports the claimant has some acute condition requiring the surgical procedure and the limits were relevant at the time and during recovery. However, the record supports the claimant was discharged to physical therapy, supporting rehabilitation and greater activity. Further, the record supports no recurrence of conditions or ongoing symptomology related to the conditions warranting the post operative limits. Thus, I find the limitations somewhat persuasive as they were relevant at the time they were assessed, but overall entitled to no more than some weight, as the record supports they were temporary in duration and relevant only during post surgical recovery.

(R. 33.) Thus, the ALJ considered whether Plaintiff's hip condition required any additional limitation in the RFC, thereby properly considering the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803. Further, Plaintiff failed to

8

specify what additional limitations the ALJ should have included due to her hip condition that were not already accounted for by the physical limitations in the RFC. Accordingly, the Court finds any error the ALJ may have made in determining that Plaintiff's hip condition was non-severe was harmless.

**B.     The ALJ did not err in her consideration and weighing of Dr. Cruzado's opinions.**

Plaintiff next argues that the RFC is not supported by substantial evidence because the ALJ erred in her consideration and weighing of the opinion evidence. (Pl.'s Statement of Errors 18–24, ECF No. 21.) Specifically, Plaintiff contends that the ALJ failed to give controlling weight to her treating physician, and that the ALJ's reasons for discounting the opinion are not supported by substantial evidence. (*Id.*)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion, like that of Dr. Cruzado, is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

9

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

10

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ offered the following discussion of Dr. Cruzado's opinion:

> I have read and considered the opinions provided by Dr. Cruzado evidenced at Exhibit 7F and Exhibit 10F, from April 2017 and August 2018 respectively. I find the more restrictive assessment at Exhibit 7F from April 2017 less persuasive. First, the form is more dated and evidences greater physical limitation that is no longer supported by the reduction in limitations noted in the form at Exhibit 10F, suggesting some physical improvement. Second, while the physician noted the claimant required assistive devices in 2017, the physician noted in 2018, such devices were *not* needed. I find such differences and greater physical abilities evidenced at Exhibit 10F consistent with the evidence of record showing no more than conservative treatment and general stability with medication management. While I find Exhibit 10F more persuasive than Exhibit 7F, it should be noted I find the significant restrictive lifting, carrying, sitting, standing, and walking limits unsupported by the record as a whole. While the physician was a treating source, he is not deemed a specialist and neither his treatment notes nor the notes of other providers provide objective signs or findings, such as MRI testing, to support such significant limitation. For example, the MRI findings snow only tiny central disc protrusion in the lumbar spine (Exhibit 2F/64) and osteophyte with disc degeneration in the thoracic spine (Exhibit 2F/98). The record also continues to show despite the objective findings of spinal degeneration that the claimant's back condition was stable and responded to conservative naproxen medication and intermittent lidocaine patch treatment (Exhibit 9F/4). Further, the physician's limitation of the use of the upper right extremities is not supported. The physician does not cite to any upper extremity or cervical spine condition that would affect the use of the hands/arms. The record does not document consistent or significant findings of neuropathy affecting her hands or arms. In terms of the cited mental limits, I find he is not a mental health specialist. Dr. Cruzado has not required her to seek specialist care to obtain ongoing medication. Therefore, I find the forms overall are internally inconsistent with each other and only partially consistent with the objective findings of record as noted. Thus, I find the form at 7F less persuasive than the subsequent form at 10F and overall find both forms no more than somewhat persuasive and afford the forms collectively no more than partial weight.

(R. 33.)

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Cruzado's opinions. The ALJ articulated the weight he afforded the opinions and properly declined to afford them controlling weight on the grounds that they were unsupported by objective evidence and inconsistent with the record as a whole. Substantial evidence supports the ALJ's determinations. For example, Dr. Cruzado's opined significant limitations as to lifting, carrying, sitting, standing, and walking are not supported by MRI records, which reflect only minor abnormalities (R. 358, 392). Moreover, Plaintiff's back condition is documented in Dr. Cruzado's own treatment notes to be stable and responsive to conservative treatment with naproxen and intermittent use of lidocaine patches, which is inconsistent with his opined significant limitations. (*Id.* at 628.) Nor are Dr. Cruzado's opined limitations as to Plaintiff's upper extremities supported by the existence of any upper extremity or cervical spine condition that would affect the use of Plaintiff's hands or arms. This lack of support and consistency is substantial evidence on which the ALJ may rely to decline to give Plaintiff's treating physician's opinions controlling weight. *See* 20 C.F.R. § 416.927(c)(2) (treating physicians' opinion is to be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record").

Plaintiff does not contest the specific inconsistencies the ALJ identifies, but instead cites portions of the record that she maintains support her alleged level of impairment. For example, Plaintiff visited the emergency department five times during the relevant period for severe low-back pain. (R. 354, 370, 385, 461, 566.) Review of these records, however, reveals that four of these emergency department visits occurred in 2016 and one in 2017, whereas Dr. Cruzado's March 2018 notes reflect that Plaintiff's back condition was stable and responsive to

conservative treatment. (R. 628.) These records, therefore, support the ALJ's finding that Plaintiff's back condition had stabilized. Plaintiff also notes that Dr. Cruzado documented diffuse back pain (R. 626) and that other providers noted tenderness and weakness (*see, e.g. id.* at 343, 385) and gait abnormalities (*see, e.g. id.* at 454, 635). But the existence of evidence in Plaintiff's favor does not mean that the ALJ's decision to discount Cruzado's opinion was not supported by substantial evidence. "This is the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-CV-01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

For the foregoing reasons, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in her consideration and weighing of Dr. Cruzado's opinion.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that the Commissioner's decision be **AFFIRMED**.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

      /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE